## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBIN GLOSS, Individually and for
Others Similarly Situated

v.

MCLAREN BAY REGION and
MCLAREN HEALTH CARE
CORPORATION

**Case No.**

Jury Trial Demanded

FLSA Collective Action
Pursuant to 29 U.S.C. § 216(b)

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Robin Gloss ("Gloss") brings this collective action to recover unpaid overtime and other damages from McLaren Bay Region ("Bay Region") and McLaren Health Care Corporation ("McLaren") (together "Defendants").

2.     McLaren and Bay Region jointly employ Gloss as an Emergency Room Registered Nurse at McLaren's Bay Region facility.

3.     Like the Putative Class Members (as defined below), Gloss regularly works more than 40 hours in a workweek.

4.     But Defendants do not pay these employees for all the hours they work.

5.     Instead, Defendants automatically deduct 30 minutes a day from these employees' work time for so-called "meal breaks."

6.     Gloss and the Putative Class Members are thus not paid for this time.

7.     But Defendants fail to provide Gloss and the Putative Class Members with

1

*bona fide* meal breaks.

8.      And Gloss and the Putative Class Members do not actually receive *bona fide* meal breaks.

9.      Instead, Defendants require Gloss and the Putative Class Members to remain on-duty and performing compensable work throughout their shifts and continuously subject them to interruptions during their unpaid "meal breaks."

10.     Defendants' auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Gloss and the Putative Class Members of overtime pay for hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has general personal jurisdiction over Bay Region because is a domestic corporation headquartered in Bay City, Michigan.

13.     This Court has general personal jurisdiction over McLaren because McLaren is a domestic corporation headquartered in Grand Blanc, Michigan.

14.     Venue is proper because Defendants both reside in Michigan, and McLaren maintains its headquarters in Grand Blanc, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

15.     Gloss has worked for Defendants as an Emergency Room Registered Nurse at McLaren's Bay Region facility from approximately May 2008 through the present.

16.     Throughout her employment, Defendants jointly classified Gloss as non-exempt and paid her on an hourly basis.

17.     Throughout her employment, Defendants subjected Gloss to their common practice of automatically deducting 30 minutes a workday from her recorded work time for so-called "meal breaks."

18.     But throughout her employment, Defendants have failed to provide Gloss with *bona fide* meal breaks.

19.     And throughout her employment, Gloss has not actually receive *bona fide* meal breaks.

20.     Gloss's written consent for McLaren is attached as **Exhibit 1**.

21.     Gloss's written consent for Bay Region is attached as **Exhibit 2**.

22.     Gloss brings this action on behalf of herself and other similarly situated hourly, non-exempt employees who have worked for Defendants at the Bay Region facility and were subject to Defendants' automatic meal break deduction policy.

23.     Defendants automatically deduct 30 minutes per shift from these employees' recorded work time for so-called "meal breaks."

24.     But Defendants uniformly require these employees to remain on-duty and

performing compensable work throughout their shifts, including during their unpaid "meal breaks."

25.     Thus, Defendants uniformly deprive these employees of overtime pay for hours worked in excess of 40 each workweek, in violation of the FLSA.

26.     The Putative Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees, who worked for, or on behalf of, McLaren and Bay Region at the Bay Region facility, who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Collective").**

27.     McLaren is a Michigan not-for-profit corporation that maintains its headquarters in Grand Blanc, Michigan.

28.     McLaren may be served with process by serving its registered agent: **Philip A. Incarnati, One McLaren Parkway, Grand Blanc, Michigan 48439**, or wherever he may be found.

29.     Bay Region is a Michigan not-for-profit corporation that maintains its headquarters in Bay Region, Michigan.

30.     Bay Region may be served with process by serving its registered agent: **Darrell Lentz, 1900 Columbus Avenue, Bay City, Michigan 48708**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

31.     At all relevant times, McLaren was an "employer" within the meaning of

Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32.     At all relevant times, Bay Region was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33.     At all relevant times, McLaren, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

34.     At all relevant times, Bay Region, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

35.     At all relevant times, McLaren was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because McLaren, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

36.     At all relevant times, Bay Region was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Bay Region, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

37.     At all relevant times, McLaren has had an annual gross volume of sales

made or business done of not less than $1,000,000 each year.

38.     At all relevant times, Bay Region has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39.     At all relevant times, Defendants jointly employed Gloss and the Putative Class Members as "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

40.     At all relevant times, Gloss and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

41.     Defendants uniformly deduct 30 minutes a shift from Gloss's and the Putative Class Members' wages for meal breaks, even when these employees do not actually receive a *bona fide*, uninterrupted meal break.

42.     As a result, Defendants fail to pay Gloss and the Putative Class Members for compensable work hours, including overtime hours, in violation of the FLSA.

43.     Defendants' automatic meal break deduction policy, which deprives Gloss and the Putative Class Members of overtime compensation for the weeks in which these employees work in excess of 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTS

44.     McLaren bills itself as "a $6.6 billion, fully integrated health care delivery system . . . [that] includes 13 hospitals in Michigan, ambulatory surgery centers, imaging

centers, a 490-member employed primary and specialty care physician network"[1]

45.     Indeed, McLaren provides service across Michigan, which are all a part of its McLaren network:



46.     "McLaren Bay Region is a 415-bed acute care hospital providing specialty,

[1] https://www.mclaren.org/ (last accessed June 7, 2024).
[2] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 7, 2024).

primary and preventative care."[3]

47.     McLaren and Bay Region have common ownership and/or management.

48.     For example, Heather Gallegos is Bay Region's Secretary and a member of McLaren's Board of Directors (as well as Bay Region's). Exhibit 3 (McLaren Health Care Conversations, 2023 Annual Report) at 15.

49.     Likewise, McLaren and Bay Region have shared and/or centralized human resources functions.

50.     For example, Carolyn Potter holds the title of Regional Vice President for Human Resources at Bay Region, as well as three other McLaren Facilities. Ex. 3 at 16.

51.     For example, McLaren maintains centralized control of recruiting and hiring at all McLaren facilities, including the Bay Region facility. *See* Ex. 3 at 3, 7, 11.

52.     Thus, to work at any McLaren facility, including the Bay Region facility, Gloss and the Putative Class Members must apply though McLaren.[4]

53.     McLaren and Bay Region also have shared business operations.

54.     For example, McLaren utilizes a system-wide appointment scheduling across Bay Region and other McLaren facilities. *See* Ex. 3 at 12.

55.     Likewise, McLaren has centralized its staffing operations and digitized the

---

[3] https://www.mclaren.org/bay-region/mclaren-bay-region-home (last accessed June 7, 2024).

[4] https://careers.mclaren.org/ (last accessed June 7, 2024).

McLaren data systems for staff across its healthcare network, including employees working at the Bay Region facility like Gloss and the Putative Class Members. *See* Ex. 3 at 4.

56.    Indeed, McLaren touts that its "entire complement of employees across the system stepped up to do their part in reducing expenses corporatewide." Ex. 3 at 5.

57.    McLaren's Operations Statistics show data across the entire McLaren universe, and it does not limit its standardization based on facility.[5]

58.    To complete their shared business objectives, McLaren and Bay Region jointly employ patient care workers, including Gloss and the Putative Class Members, to provide patient care services and treat the patients in McLaren's Bay Region facility.

59.    McLaren hires and treats these employees just like regular employees.

60.    McLaren, jointly with Bay Region, controls all meaningful aspects of these patient care employees' employment.

61.    McLaren and Bay Region jointly control Gloss's and the Putative Class Members' rates and methods of pay.

62.    McLaren and Bay Region jointly control Gloss's and the Putative Class Members' schedules and assignments.

63.    McLaren and Bay Region jointly control Gloss's and the Putative Class

---

[5] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 7, 2024).

- 9 -

Members' patient care work.

64.   McLaren and Bay Region jointly require Gloss and the Putative Class Members to follow McLaren's and Bay Region's policies, procedures, and protocols.

65.   Gloss's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by McLaren and Bay Region.

66.   Indeed, upon hiring, McLaren and Bay Region jointly require all the patient care employees who work in the Bay Region facility, including Gloss and the Putative Class Members, to complete trainings on McLaren's uniform policies, procedures, and protocols to ensure their work conforms to the same.

67.   McLaren and Bay Region prohibit Gloss and the Putative Class Members from varying their job duties outside of the predetermined parameters and require Gloss and the Putative Class Members to follow McLaren's and Bay Region's policies, procedures, and directives.

68.   McLaren and Bay Region jointly prohibit Gloss and Putative Class Members from straying from McLaren's and Bay Region's procedures, plans, protocols, and specifications.

69.   McLaren enforces the same employee expectations for all its employees, regardless of what McLaren facility they are assigned.[6]

---

[6] https://www.mclaren.org/main/what-we-expect-from-our-employees (last accessed June 7, 2024).

70. Without the patient care work Gloss and the Putative Class Members perform, McLaren and Bay Region would not be able to complete their common business objective of providing healthcare services to patients in McLaren's Bay Region facility.

71. Thus, Gloss's and the Putative Class Members' work is integral to, and simultaneously benefits, McLaren's and Bay Region's shared business objectives.

72. Gloss and the Putative Class Members rely on McLaren and Bay Region for work and compensation.

73. Gloss and the Putative Class Members do not substantially invest in the tools required to complete the overall job they are assigned.

74. Rather, McLaren and Bay Region incur large-scale business and operating expenses like marketing, payroll, equipment, tools, healthcare facilities, and materials.

75. At all relevant times, McLaren and Bay Region jointly maintained control, oversight, and direction of Gloss and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

76. At all relevant times, McLaren and Bay Region jointly possessed the authority to hire, fire, and discipline Gloss and the Putative Class Members.

77. At all relevant times, McLaren and Bay Region jointly supervised and controlled Gloss's and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

78.     At all relevant times, McLaren and Bay Region jointly maintained employment records for Gloss and the Putative Class Members.

79.     In sum, at all relevant times, McLaren and Bay Region jointly employed Gloss and the Putative Class Members.

80.     McLaren and Bay Region jointly classify these patient care employees working at McLaren's Bay Region facility, including Gloss and the Putative Class Members, as non-exempt from overtime and uniformly pay them on an hourly basis.

81.     For example, McLaren and Bay Region jointly employed Gloss as an Emergency Room Registered Nurse at McLaren's Bay Region facility from approximately May 2008 through the present.

82.     As an Emergency Room Registered Nurse, Gloss's primary responsibilities include responding to emergency calls, treating incoming patients, checking vitals, examining symptoms, administering medications, assisting doctors with treatment, monitoring patients' condition, and charting.

83.     Throughout her employment, Defendants have jointly subjected Gloss to Defendants' common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for "meal breaks," regardless of whether she actually received a *bona fide* meal break.

84.     But throughout her employment, Gloss has not actually received *bona fide* meal breaks.

85.    Gloss and the Putative Class Members perform their jobs under Defendants' joint supervision, and using materials, equipment, and technology approved and supplied by Defendants.

86.    Defendants jointly require Gloss and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

87.    At the end of each pay period, Gloss and the Putative Class Members receive wages from Bay Region that were determined by common systems and methods that McLaren and Bay Region jointly select and control.

88.    Defendants jointly require their hourly, non-exempt patient care employees, including Gloss and the Putative Class Members, to record their hours worked using Defendants' timeclock system (Kronos).

89.    Further, Defendants subject their hourly, non-exempt patient care employees working at the Bay Region facility, including Gloss and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for "meal periods" each shift.

90.    Specifically, Defendants automatically deduct 30 minutes from Gloss's and the Putative Class Members' recorded time worked each shift for "meal periods," regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

91.     But Defendants fail to provide Gloss and the Putative Class Members with *bona fide* meal periods.

92.     And Gloss and the Putative Class Members do not actually receive *bona fide* meal breaks.

93.     Instead, Defendants require Gloss and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subjecting them to work interruptions during their unpaid "meal periods."

94.     Indeed, because of these constant work interruptions, Gloss and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

95.     Rather, during their unpaid "meal breaks," Gloss and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

96.     Thus, Gloss and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants' – not these employees' – shared predominant benefit.

97.     This unpaid time is compensable under the FLSA because Defendants knew, or should have known, that (1) Gloss and the Putative Class Members were performing unpaid compensable work during their "meal breaks," (2) they were

interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, (4) the meal period was less than 30 consecutive minutes, (5) they were not free to engage in personal activities during their meal periods because of constant interruptions, (6) they remained on Defendants' premises, and/or (7) they predominantly spent their unpaid meal periods performing their regular patient care duties for Defendants' shared predominant benefit.

98.   Defendants jointly failed to exercise their shared duty to ensure Gloss and the Putative Class Members were not performing work that Defendants did not want performed during their unpaid "meal breaks."

99.   Despite accepting the benefits, Defendants did not pay Gloss and the Putative Class Members for the compensable work they performed during their "meal breaks."

100.   Defendants know Gloss and the Putative Class Members routinely perform work "off the clock" during their unpaid "meal breaks" because Defendants expect and require these employees to do so.

101.   But Defendants do not pay Gloss and the Putative Class Members for their routine "off the clock" meal break work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

102.   Gloss worked more than 40 hours in at least one workweek during the

three years before this Complaint was filed.

103.   Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

104.   And Gloss and the Putative Class Members regularly are also required to work during their unpaid "meal breaks" "off the clock" in order to complete their job duties and patient care responsibilities.

105.   As a result, Gloss and the Putative Class Members work in excess of 40 hours in a typical workweek.

106.   When Gloss and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Defendants' failure to include time these employees work during their unpaid meal breaks in their total number of hours worked in a given workweek.

107.   Thus, under Defendants' uniform, automatic meal break deduction policy, Gloss and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

108.   Gloss realleges and incorporates all other paragraphs by reference.

109.   Gloss brings her FLSA claims as a collective action on behalf of herself

and the Putative Class Members pursuant to Section 216(b) of the FLSA.

110.    The Putative Class Members are victimized by Defendants' pattern, practice, and/or policy of automatically deducting compensable work time from their wages for so-called "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

111.    Other Putative Class Members work with Gloss and indicate they are paid in the same manner, performed similar work, and were subject to Defendants' same automatic meal break deduction policy.

112.    Based on her experiences with Defendants, Gloss is aware Defendants' illegal practices are imposed on the Putative Class Members.

113.    The Putative Class Members are similarly situated in all relevant respects.

114.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

115.    Therefore, the specific job titles or precise job locations of the various members of the Putative Collective do not prevent collective treatment.

116.    Rather, the Putative Collective is held together by Defendants' uniform automatic meal break deduction policy that systematically deprives Gloss and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

117.    The Putative Class Members are similarly denied overtime pay when they

work more than 40 hours in a week.

118.   The overtime owed to Gloss and the Putative Class Members can be calculated using the same records and using the same formula.

119.   Gloss's experiences are therefore typical of the experiences of the Putative Class Members.

120.   Gloss has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

121.   Like each Putative Class Member, Gloss has an interest in obtaining the unpaid overtime wages owed under federal law.

122.   A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

123.   Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

124.   Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

125.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

126.   The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

127.   Among the common questions of law and fact are:

a.   Whether McLaren and Bay Region jointly employed Gloss and the Putative Class Members;

b.   Whether Defendants engaged in a policy and practice of automatic time deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted, in violation of the FLSA;

c.   Whether Defendants' automatic meal break deduction policy deprived Gloss and the Putative Class Members of pay for time worked during "meal periods" that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

d.   Whether Defendants failed to pay Gloss and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

e.   Whether Defendants knew, or had reason to know, Gloss and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

  f. Whether Defendants decision not to pay Gloss and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

  g. Whether Defendants' violations of the FLSA were willful.

128. Gloss and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

129. Gloss knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

130. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

131. Therefore, the issue of damages does not preclude collective treatment.

132. Defendants are jointly liable under the FLSA for failing to pay overtime to Gloss and the Putative Class Members.

133. Consistent with Defendants' illegal automatic meal break deduction policy, Gloss and the Putative Class Members are not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

134. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Gloss and the Putative Class Members.

135.    Defendants' illegal automatic meal break deduction policy deprived Gloss and the Putative Class Members of the premium overtime wages they are owed under federal law.

136.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

137.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

138.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

139.    In fact, because McLaren has centralized its staffing operations and digitalized data systems for staff across its network, employee records for the Putative Class Members are readily available through McLaren's centralized data network.

### DEFENDANTS' VIOLATIONS OF THE FLSA WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA

140.    Gloss realleges and incorporates all other paragraphs by reference.

141.    Defendants knew they jointly employ the patient care employees that work at McLaren's Bay Region facility, including Gloss and the Putative Class Members.

142.    Defendants knew Gloss and the Putative Class Members are non-exempt employees entitled to overtime because Defendants uniformly classified and paid them as such.

- 21 -

143.   Defendants knew Gloss and the Putative Class Members are paid on an hourly basis because Defendants jointly dictated and controlled the same.

144.   Defendants knew Gloss and the Putative Class Members work more than 40 hours in at least one workweek during the last 3 years because Defendants jointly required these employees to record their hours worked using Defendants' timeclock system.

145.   Defendants knew they are subject to the FLSA, including its overtime provisions.

146.   Defendants knew the FLSA requires them to pay employees, including Gloss and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

147.   Defendants knew the FLSA requires them to pay Gloss and the Putative Class Members for all hours these employees performed compensable work.

148.   Defendants knew they fail to provide Gloss and the Putative Class Members with *bona fide* meal breaks.

149.   Defendants knew Gloss and the Putative Class Members regularly work during their unpaid meal breaks because Defendants expected and required them to do so.

150.   Defendants knew Gloss and the Putative Class Members regularly spend

their "meal breaks" substantially performing their normal patient care job duties for Defendants' common predominant benefit.

151.   Defendants knew that, as Gloss's and the Putative Class Members' employers, they had a duty to ensure these employees are not performing work that Defendants do not want performed during their unpaid "meal breaks."

152.   Defendants knew Gloss and the Putative Class Members perform compensable work during their unpaid "meal breaks."

153.   Defendants knew they automatically deduct 30 minutes per shift from Gloss's and the Putative Class Members' recorded work time for "meal breaks."

154.   Defendants knew they automatically deduct 30 minutes per shift from Gloss's and the Putative Class Members' recorded work time for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

155.   Defendants knew Gloss and the Putative Class Members do not receive *bona fide* meal breaks.

156.   Defendants knew they do not pay Gloss and the Putative Class Members for all hours these employees performed compensable work, including the compensable work they performed during their unpaid meal breaks.

157.   Thus, Defendants knew, or should have known, that they failed to pay Gloss and the Putative Class Members overtime wages for all overtime hours worked in violation of the FLSA.

158.   Defendants' failure to pay Gloss and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

159.   Indeed, McLaren and its affiliated entities have been sued previously by employees for failing to pay overtime wages for all overtime hours worked, including for automatically deducting compensable work time for meal breaks. *See, e.g., Hart v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.); *Crane, et al. v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.).

160.   Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal automatic meal break deduction policy that deprives Gloss and the Putative Class Members of overtime compensation for all overtime hours worked in willful violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA

161.   Gloss realleges and incorporates all other paragraphs by reference.

162.   Gloss brings her FLSA claims as a collective action on behalf of themselves and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

163.   Defendants violated, and are violating, the FLSA by failing to pay Gloss and the Putative Class Members overtime wages for all hours worked in excess of 40 in

a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

164.  Throughout the relevant period, Defendants automatically deducted 30 minutes per shift from Gloss's and the Putative Class Members' recorded work time for so-called "meal breaks."

165.  But throughout the relevant period, Gloss and the Putative Class Members did not actually receive *bona fide* meal breaks.

166.  Instead, throughout the relevant period, Defendants expected and required Gloss and the Putative Class Members to remain on-duty and perform compensable work during their unpaid meal breaks.

167.  Gloss and the Putative Class Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work that they performed and from which Defendants derived a direct and substantial benefit.

168.  Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Gloss and the Putative Class Members overtime compensation for all overtime hours worked.

169.  Defendants' failure to pay Gloss and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours

worked made in good faith.

170.    Accordingly, Gloss and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

**JURY DEMAND**

171.    Gloss demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Gloss, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly liable for unpaid back wages due to Gloss and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

c.    Judgment awarding Gloss and the Putative Class Members all

unpaid overtime and other damages available under the FLSA;

d.      An Order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Jennifer McManus
**Jennifer L. McManus (P65976)**
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 24122166
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

**Richard J. (Rex) Burch***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025

Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR GLOSS AND THE PUTATIVE CLASS MEMBERS**